[Crim. No. 1595.   First Appellate District, Division Two.—May 4, 1931.]

THE PEOPLE, Respondent, v. A. R. SHURTLEFF, Appellant.

Willard W. Shea, Public Defender, and Raymond A, Ferrario, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Earl Warren, District Attorney, and Frank J. Coakley, Deputy District Attorney, for Respondent.

NOURSE, P. J.—Defendant was tried jointly with Collier, Davis and Gardella upon an indictment framed in four counts, the first of which charged a conspiracy to ask and to receive bribes, the other three charging completed acts of bribery. During the course of the trial the offense charged in count three was dismissed and the jury returned a verdict finding all the defendants guilty on the first count and all not guilty on counts two and four. On separate appeals from the judgment and from the orders denying new trials

we affirmed as to defendants Collier and Davis and reversed as to defendants Shurtleff and Gardella. (*People* v. *Collier et al.*, 111 Cal. App. 215 [295 Pac. 898].) Within time a rehearing was granted as to defendant Shurtleff to enable us to give further consideration to the evidence corroborative of this defendant's participation in the conspiracy.

The evidence of the alleged conspiracy is recited at considerable length in *People* v. *Collier, supra,* and we do not deem it necessary to republish it here or to say more than that it tended to prove that the three defendants—Collier, Davis and Shurtleff—who were deputies in the office of the sheriff of Alameda County—joined with one Smith in a conspiracy to exact tribute from bootleggers operating within the county; that Smith made the collections and divided the proceeds among the co-conspirators; and that these transactions were merely a part of a county-wide conspiracy in which the sheriff and others participated to ask and receive bribes from those engaged in unlawful occupations within the county. This appellant does not seriously contend that the evidence is not legally sufficient to support the verdict if the testimony of the co-conspirator is sufficiently corroborated.

The first point which this appellant urges is that the verdict is contrary to the law and the evidence. The point is that overt act number nine alleged in the first count of the indictment is identical with count number four pleading a specific charge of bribery and that, the jury having found all defendants not guilty under count number four, it must follow that this finding is an acquittal of the general conspiracy charge. *Oliver* v. *Superior Court*, 92 Cal. App. 94 [267 Pac. 764], is cited to the point, but the case is not applicable to the situation here. Four defendants were jointly charged with the commission of nine overt acts as a part of the general charge of conspiracy involving the four defendants. It was not necessary to find all four defendants guilty of the commission of all the nine overt acts, and we are not permitted to presume that, because the jury found all four defendants not guilty of the ninth alleged overt act, it thereby failed to find any one of the defendants guilty of any of the remaining eight alleged overt acts. To the contrary, we must presume, in support of the verdict, that the jury found at least one of the conspirators guilty of at least

one of these acts, and that is all that is necessary to support the verdict. (*People* v. *Lawrence,* 143 Cal. 148, 157 [68 L. R. A. 193, 76 Pac. 893]; *People* v. *Kauffman,* 152 Cal. 331, 334 [92 Pac. 861]; *People* v. *Ferlin,* 203 Cal. 587, 599 [265 Pac. 230].)  ▌ It is true, of course, that the act proved must be the ordinary and probable effect of the common design and not an independent product of the mind of one of the conspirators foreign to the common design of the conspirators (*People* v. *Ferlin, supra,* p. 597). But this is a question for the jury to determine (*People* v. *Kauffman, supra,* p. 335), and when the evidence is legally sufficient to support a finding adverse to appellant on that issue it will be presumed that the jury so found.

Further grounds raised by this appellant may be considered together. It is argued that the trial court should have granted the motion to advise the jury to acquit; that the evidence is insufficient to support the verdict; and that the testimony of the co-conspirator was not corroborated as required by section 1111 of the Penal Code.  ▌ The testimony of the witness Smith relating a conversation with his co-conspirator Davis to the effect that Shurtleff would have to be ''cut in'' on the proceeds, and that thereafter Shurtleff received his share through the payments made on an automobile purchase, was sufficient, if properly corroborated, to sustain the verdict against this appellant. Hence, the trial court did not err in denying the motion to advise an acquittal.

Upon the former hearing we reversed the judgment as to Shurtleff upon the grounds that Smith's testimony lacked sufficient corroboration. Upon a review of the record we are satisfied that we were in error in this respect and that the judgment should be affirmed.

▌ The rule as to the measure of corroborating evidence required by section 1111 of the Penal Code is not a definite and fixed rule in this state. Appellant cites and relies on *People* v. *Davis,* 210 Cal. 540 [293 Pac. 32], *People* v. *Washburn,* 104 Cal. App. 662 [286 Pac. 711], *People* v. *Sheffield,* 108 Cal. App. 721 [293 Pac. 72], and *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478]. Respondent relies on *People* v. *Negra,* 208 Cal. 64 [280 Pac. 354], *People* v. *Armstrong,* 114 Cal. 570 [46 Pac. 611], *People* v. *Taylor,* 70 Cal. App. 239 [232 Pac. 998], *People*

v. *Haughey,* 79 Cal. App. 541 [250 Pac. 406], and similar cases wherein the appellate court, upon a review of the evidence, held it legally sufficient to corroborate. The function of the appellate courts in this respect seems to be limited to a determination whether there is competent evidence "tending to connect the defendant with the commission of the crime charged". (*People* v. *Negra, supra.*) We find the rule well stated in *People* v. *Nikolich,* 93 Cal. App. 356, 358 [269 Pac. 721], where the court said: "The entire conduct of the defendant may be looked to for the corroborating circumstances and if from those circumstances the connection of the accused with the crime may fairly be inferred, the corroboration is sufficient. (*People* v. *Yeager,* 194 Cal. 452 [229 Pac. 40]; *People* v. *Martin,* 102 Cal. 558 [36 Pac. 952]; *People* v. *Demera,* 64 Cal. App. 121 [220 Pac. 673].)" We may add that, as we view our duty in this respect, we should give to all the evidence the full weight which the jury might have given to it and should credit to the prosecution all inferences which the reason of the jury might sanction.

Viewing the evidence in this light, we find that the direct evidence of Smith that this appellant was a participant in the conspiracy and took a division of the profits of the bribery is corroborated by the undisputed evidence that, shortly after the formation of the conspiracy, Shurtleff purchased a new automobile through Smith and that the latter paid the installments thereon out of the profits of the bribery; that all notices of installments due were sent directly to Smith and payments were made by Smith personally or by his wife, and that no moneys were paid by Shurtleff to Smith for that purpose. It is true that the appellant denied that he was involved in the conspiracy. His explanation of the automobile purchase was that he gave the installment money to Smith in cash, but took no receipt, as he fully trusted Smith. He gave as the source of the money used for that purpose and for the purpose of paying the installments upon a home which he was purchasing as a tin box in which he had deposited something over four or five thousand dollars (he could not say how much, his answer being "we will say it is between five and ten"). The appellant was married and had eight children;

he received a salary as deputy sheriff of $225 a month; before taking that office he had received $2,800 a year as a federal prohibition officer; the installments on the automobile were $75 a month, those on his home were $50 a month. With no other explanation than that given (and of course the jury was not obliged to believe that) there is ample room for the inference that the moneys used for his purchase of the automobile came from the source testified to by Smith. In fact, the explanaton of this transaction given by the appellant is so weak and incredible that the jury must have disbelieved it and must have drawn the inference that he did receive the moneys from Smith as one of the conspirators. The evidence which was before the jury did more than "raise a suspicion of defendant's guilt", within the language of *People* v. *Davis, supra,* and similar cases cited by appellant. To the contrary, the only rational conclusion to be drawn from the entire evidence is the conclusion of guilt.

A large part of the brief is devoted to a criticism of the rulings of the trial court admitting the testimony of Pisani, Santucci and others relating to similar transactions of the sheriff and his deputies in other portions of the county. Much of this testimony was stricken out in so far as it related to this appellant upon the ground that it had not been shown at that time that he participated in the proceeds of these briberies. The testimony was admitted in accord with the state's theory that the conspiracy charged in the indictment was merely a part of a county-wide conspiracy on the part of the sheriff and some of his deputies to exact tribute generally from all those engaged in illegal pursuits. The testimony here objected to was testimony of the common design of the criminal enterprise charged in the indictment and was admissible under the rule of *People* v. *Schmidt,* 33 Cal. App. 426, 446 [165 Pac. 555], *People* v. *Lorraine,* 90 Cal. App. 317, 327 [265 Pac. 893], and *People* v. *Sampsell,* 104 Cal. App. 431, [286 Pac. 434].

The judgment and order denying a new trial are affirmed.

Sturtevant, J., and Burroughs, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 19, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1931.