SEBRING, Justice.
This is an original habeas corpus proceeding to test the legality of a contempt order entered under the following circumstances:
One Diamante Urga was informed against in the Criminal Court of Record of Hills-borough County, Florida, for a violation of the criminal laws of Florida. One of defense counsel, in preparing for the trial, interviewed the prosecuting witness in the presence of a privately employed stenographer who transcribed, in shorthand, what was said by the witness and defense counsel. When the cause came on for trial, the prosecuting witness testified on behalf of the state and thereafter was cross-examined by defense counsel. During the course of this cross-examination defense counsel asked the witness whether or not such an interview had taken place, and upon her admission that it had, interrogated the witness as.to whether or not certain questions had been asked during the course of the interview and whether certain answers had been given. Throughout the course of this interrogation defense counsel frequently referred to the stenographic transcript for the purpose of formulating the questions exactly as they had been propounded at the interview and of comparing the answers given on the cross-examination with the answers given by the witness at the time of the interview.
At the conclusion of the cross-examination, the county solicitor requested defense counsel to allow him to examine the transcript and to use it in questioning the witness on redirect examination. Defense counsel refused to accede to the request on the ground that the transcript constituted a part of the private files of defense counsel. Thereupon, upon motion of the county solic *795 itor, the trial judge ordered defense counsel to turn the transcript over to the prosecution ■ for the purpose stated, and, upon his refusal, adjudged defense counsel in contempt of court and sentenced him to pay a fine of $250 or serve 10 days in the county jail.
The question is whether or not, under the facts stated, the contempt order was lawfully entered against defense counsel.
As noted in the case of Lindberg v. State, 134 Fla. 786, 184 So. 662, 664, a transcript of the nature here involved is simply a “private memoranda of [counsel].” While the decision of this Court in respect to use of the transcript by the attorney in the Lindberg case turned upon the fact that the effort at impeachment failed, and that consequently the use of the notes and the denial of opposing counsel’s request for inspection of same was “trivial” and insufficient to require reversal in any event, the opinion in the case stated that “it is the right of counsel to make or have made memoranda of the statements of those who will probably he witnesses at a trial and to use that mem-oranda both to refresh his memory and for the purpose of impeachment, if the mem-oranda should become useful for that purpose, although the memorandum itself is not admissible as substantive evidence”. 184 So. at page 664.
In the present proceeding it is acknowledged by the state that writings such as are here involved have no public character, and are not initially open to inspection of opposing counsel. However, the state contends that whenever such papers are used by counsel in any fashion before the jury, they then become subject to demand for production. In support of its contention the state relies upon what was said in the Texas case of Board v. State, 122 Tex.Cr.R. 487, 56 S.W.2d 464; but our study of that opinion and the decisions upon which it is based reveals to us that the rule prevailing in that jurisdiction grew out of what appears to be a misapplication of the principles governing memoranda used by a witness in his testimony, and a dubious analogy between private papers or memoranda, on the one hand, and public or official materials, on the other. Rutledge v. State, 94 Tex.Cr.R. 231, 250 S.W. 698; Green v. State, 53 Tex.Cr.R. 490, 110 S.W. 920, 22 L.R.A..N.S., 706. Certain other cases have been cited by the state in support of its position but these cases are readily distinguishable either on the facts, or on the specific nature of the papers involved.
Our study of the matter leads us to the view that the better reasoned and apparently more numerous cases that bear directly on the question arising in this proceeding are to the effect that it is error to compel delivery of a transcript of a private and -unofficial nature to opposing counsel, merely because it is used by counsel as an aid in examination to get the questions and answers put and made.
In respect to a “stenographic report of an interview or private inquisition” which was used by counsel for the prosecution in his re-examination of a witness, “ to reproduce the questions and answers, no doubt to refresh the memory of the witness as to what did occur on that occasion,” it was held in the leading case of State v. Rhoads, 81 Ohio St. 397, 91 N.E. 186, 27 L.R.A.,N.S., 558 that such a transcript “had no public characteristic whatever. It was not an official or public record or document, and had not been filed with any one as such. * * * This transcript was not evidence, and of itself could never become such under any circumstances of which we can have any present conception, certainly not independent evidence. If the [state] witness [who was testifying] had been using the transcript from which to testify, or to refresh and aid memory in giving testimony on the issue between the state and [the accused], it might have been entirely proper and justifiable on the part of counsel for the accused to ask on cross-examination the opportunity to inspect the paper being referred to by the witness. In that situation, the witness may be interrogated as to the character of the paper beinjg used or referred to, and it became a subject of examination in connection with the cross-examination. But that was not the situation *796 we are reviewing. The prosecuting attorney in preparing for an important trial may in the seclusion of his study prepare notes of the facts which he expects to present at the trial, the names of witnesses and sketches of the evidence of each, and the order in which he desires to examine them. In such memoranda he may note • precautions to be taken on this or that stage of the trial, Has the court authority to compel counsel, on request of his adversary, to deliver this prepared memoranda for his inspection? Could such a practice of search and seizure be justified by the law, or any reasonable rule of procedure? If so, an attorney’s private papers and his written data — his private notes made to aid memory on the trial — are no longer safe or sacred, and their possession may be ordered given over to one who has no legal claim to or upon them. Such an order would very much resemble the order under review. We cannot accord to one accused of crime what could not be awarded to the law-abiding citizen in a court of justice.”
The principle enunciated in State v. Rhoads, supra, with reference to transcripts of private interviews, has been followed in a recent case in the same jurisdiction, where “the prosecutor questioned the witnesses with the help of a typewritten transcription of the notes which he had in his possession. The court accorded counsel for appellant the privilege of examining the shorthand notes from which the witnesses testified, but overruled his request to be furnished .a copy of the typewritten transcription of the notes which was in the possession of the prosecutor. * * * ” State v. Thomasson, Ohio App., 97 N.E.2d 42, 45.
To like effect is a California case, People v. Singh, 136 Cal.App. 233, 28 P.2d 416, 420, wherein it is held: “It was not error for the prosecution to refuse to submit for inspection to a witness for the defendant an unsigned, unapproved, and extrajudicial typewritten report made by the court reporter of statements which were contradictory of his testimony given at the trial. This record was referred to in an effort to impeach the witness under the provisions of section 2052 of the Code of Civil Procedure. Nor was it error for the court to refuse to compel the prosecution to submit the document to the defendant’s attorney for inspection. People v. Glaze, 139 Cal. 154, 72 P. 965; People v. Haughey, 79 Cal.App. 541, 250 P. 406; People v. Casey, 79 Cal.App. 295, 249 P. 525; People v. Keyes, 103 Cal.App. 624, 638, 284 P. 1096 [1105]; People v. Meadows, 108 Cal.App. 67, 291 P. 226. It has been repeatedly held that such extrajudicial statements made by a third party without the signature or approval of the witness is not itself competent evidence with which to impeach him, and that the language of section 2052, supra, to the effect that, ‘If the statements be in writing, they must be shown to the witness before any question is put to him concerning them,’ is confined to statements made in writing by the witness himself, or signed or approved by. him or such as are officially taken in regular court proceedings. In seeking to impeach a witness by proving that he has made contradictory statements at other,times, pursuant to section 2052, supra, there is no objection to counsel referring to a written memorandum, under the circumstances of this case, for the purpose of accuracy or to refresh one’s memory.”
State v. Laird, 79 Kan. 681, 100 P. 637, 639, was a case in which a stenographer who was personally employed by the county attorney, but who was paid by the state, took evidence at a preliminary examination. This evidence was taken at the direction of the county attorney-for his own use in the preparation and trial .of the case. During the trial in the district court, the county attorney used a transcript of this evidence in his examination of the witnesses. Upon cross-examination, the attorney for the defendant requested the county attorney to allow him the use of the transcript while cross-examining the' witnesses for the state. The request was denied and the trial court refused to compel a compliance with such request. In passing upon the question the Kansas Supreme Court ruled that “the transcript was not -a public document; it was the personal, private property of the county *797 attorney as much as if he had personally' made the transcript. The court was under no obligation to require the surrender of this paper to appellant. Whatever may be' said concerning the refusal of the county attorney to accede to the request of the defendant’s counsel, we cannot say that the court erred in its ruling in the premises.”
To the same effect is Cochrane v. State, 48 Ariz. 124, 59 P.2d 658, 662, wherein the defendant’s confession was taken down stenographically and the transcript was used as a memorandum by the county attorney in questioning a witness as to what such confession was. Although the ruling of the trial court on the question as to the right of defense counsel to be furnished a copy of the ttanscript for use in cross-examining the witness was not directly raised on appeal, the appellate court nevertheless disposed of the question by stating “ * * * if we concede defendant asked for a copy of the stenographic transcription of defendant’s confession, and the court refused to order the county attorney to furnish him with it, we do not think the ruling was error. The law nowhere provides for the taking stenographically of confessions of defendants, and if it is done the notes are not evidence. True, they may be used to refresh the memory of the stenographer in testifying to the confession, or by the county attorney as a memorandum in questioning persons who heard the confession, but they have no probative value whatever. They are the private papers of the person or persons who take the pains and trouble of making them.”
From the cases we have cited we conclude that, under the circumstances revealed by the record, the transcript being used by the defense counsel in his interrogation of the prosecuting witness on cross-examination was the private property of defense counsel, which the trial judge had no authority to compel him to deliver to the county solicitor for use by the latter in redirect examination. Having reached this conclusion it follows that the judgment of contempt should be vacated and set aside and that the petitioner should be dischárged from custody. ' ■
It it so ordered.
ROBERTS, C.' J., and TERRELL and MATHEWS, JJ., concur.